Leon WOMACK, Plaintiff,

v.

UNITED PARCEL SERVICE, INC., Defendant.

No. 7:03–CV–126–F(1).

United States District Court, E.D. North Carolina. Southern Division.

Feb. 9, 2004.

M. Travis Payne, Edelstein & Payne, Raleigh, NC, for Plaintiff.

Brian D. Edwards, Alston & Bird, L.L.P., Atlanta, GA, for Defendant.

## ORDER

FOX, Senior District Judge.

This matter is before the court on the Defendant's motion to dismiss Plaintiff's complaint. The Plaintiff has responded to the Defendant's motion to dismiss, the Defendant has replied, and the matter is ripe for disposition.

### I. Procedural Background

The Plaintiff, Leon Womack [Womack], filed the Complaint in this matter on July 17, 2003, alleging violations of 42 U.S.C. § 2000e *et seq.* [Title VII] and 42 U.S.C. § 1981. Womack also is a member of a nationwide class certified on October 30, 1996, in *Morgan v. UPS*, Cause No. 4:94CV1184CEJ, an action filed on June 17, 1994 in the United States District Court for the Eastern District of Missouri [the *Morgan* court]. The class representatives in *Morgan* claimed that UPS violated Title VII by discriminating against black

salaried employees nationwide in the implementation of pay and promotion policies. Additionally, the class representatives claimed that class members had been denied overall upward mobility and had been subjected to unequal pay and discriminatory working conditions in violation of Section 1981. The *Morgan* court entered summary judgment in favor of UPS on June 26, 2000, on all class claims but allowed some individual claims to continue. On May 10, 2002, the *Morgan* court entered an order stating that "judgment is entered in favor of defendant and against plaintiffs as to all class claims ... in accordance with the memorandum and order entered on June 26, 2000." *See* Ex. 8, Pl.'s Brief in Support of Pl's Resp. To Def.'s Mot. To Dismiss Pl.'s Compl. [hereinafter Pl's Brief].

On March 6, 2003, three hundred days after the *Morgan* court entered final judgment on the class claims, Womack filed a Charge of Discrimination with the Equal Employment Opportunity Commission [EEOC]. Womack received the Right to Sue Notice on April 24, 2003, and filed the Complaint in this action on July 17, 2003. UPS has now moved to dismiss Womack's Complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief may be granted. Specifically, UPS contends that both Womack's Title VII and Section 1981 claims are untimely.

## II. Standard of Review

An action should be dismissed for failure to state a claim only if it appears that the plaintiff can prove no set of facts that would entitle him to relief. *See Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Further, dismissal is appropriate when the face of the complaint clearly reveals the existence of a meritorious affirmative defense. *See Brooks v. City of Winston–Salem*, 85 F.3d 178, 181 (4th Cir.1996). *See generally* 5A CHARLES

ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (2002) ("A complaint showing that the statute of limitations has run on the claim is the most common situation in which the affirmative defense appears on the face of the pleading, rendering dismissal appropriate."). When reviewing a motion to dismiss, the court assumes the facts alleged in the complaint are true, *see McNair v. Lend Lease Trucks, Inc.*, 95 F.3d 325, 327 (4th Cir. 1996), and construes the allegations in the complaint in the light most favorable to the pleader. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90.

## III. Analysis

UPS argues that Womack's Complaint should be dismissed in its entirety. Specifically, UPS contends that Womack's claims of unlawful race discrimination and retaliation by UPS are barred by (1) Title VII's exhaustion requirements and (2) the statute of limitations applicable to Section 1981 claims. The court will examine each argument.

### A. Title VII Claims

█ In order to file a claim under Title VII, a plaintiff must first exhaust his administrative remedies by filing a timely charge of discrimination with the EEOC. *See Bryant v. Bell Atlantic Maryland, Inc.*, 288 F.3d 124, 132 (4th Cir.2002). To be timely, a charge of discrimination must be filed within 180 days after the alleged discrimination occurred, or within 300 days if the proceedings are initially instituted "with a State or local agency with authority to grant or seek relief...." *See* 42 U.S.C. § 2000e–5(e)(1); *EEOC v. Comm. Office Prod. Co.*, 486 U.S. 107, 110, 108 S.Ct. 1666, 100 L.Ed.2d 96 (1988).

█ The failure to file a timely charge with the EEOC normally bars the claim in federal court. *See Delaware State College v. Ricks*, 449 U.S. 250, 101 S.Ct. 498, 66

L.Ed.2d 431 (1980) (holding that a plaintiff's Title VII action was barred because he failed to file a timely charge of discrimination with the EEOC). However, the Supreme Court has established that Title VII's filing periods are not jurisdictional, and are therefore subject to equitable tolling. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 398, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982). Moreover, the Court has also held the filing of a class action tolls filing periods under Title VII for putative class members until class certification is denied. *Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983). *See also Sharpe v. Am. Exp. Co.*, 689 F.Supp. 294, 299 (S.D.N.Y.1988) (holding that time period for filing EEOC charge of discrimination tolled until class certification denied).

Against this backdrop, UPS asserts that Womack's Title VII claims are barred because the last act of alleged discrimination occurred in 1999; consequently, the charge of discrimination filed with the EEOC on March 6, 2003, was not timely. Furthermore, UPS contends that any tolling of the EEOC filing periods resulting from Womack's membership in the *Morgan* class ended when the *Morgan* court entered summary judgment against the class claims on June 26, 2000. In response, Womack argues that any statutes of limitation or filing periods were tolled until the *Morgan* court entered final judgment on the class claims on May 10, 2002. Consequently, Womack contends that his EEOC charge, filed exactly 300 days after the *Morgan* court entered final judgment on the class claims, complies with Title VII's exhaustion requirements. Additionally, Womack contends that his Complaint does state claims arising during the applicable limitations period, regardless of tolling.

### 1. Tolling based on class actions

Womack argues that because he was a member of a certified class in the *Morgan* class action, any limitations periods on his claims were tolled until the class claims were adjudicated. Womack urges that, in this context, the class claims were adjudicated when the *Morgan* court entered final judgment on the claims on May 10, 2002. UPS agrees that any limitations periods on Womack's claims were tolled upon the filing of the *Morgan* class action, but contends that such tolling ended when the *Morgan* court granted summary judgment to UPS on all class claims on June 26, 2000. This court concludes that the tolling of any limitations periods ended on June 26, 2000, when the *Morgan* court granted summary judgment against the class claims. A review of the rationale of the tolling doctrine helps explain the court's conclusion.

#### a. Tolling Doctrine

In the seminal case of *American Pipe & Const. Co. v. Utah*, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974), the Supreme Court first addressed the issue of class actions equitably tolling statutes of limitations for individual claims. In *American Pipe*, putative class members moved to intervene in the named plaintiffs' individual action after the district court ruled that a federal antitrust suit could not proceed as a class action. *See id.* at 543–44, 94 S.Ct. 756. The district court denied the motion to intervene, concluding that the limitations period had expired. *See id.* at 544, 94 S.Ct. 756. The Supreme Court held that the claims of the intervenors were not time barred because the statute of limitations was tolled, by the filing of the class action, as to all members of the putative class who made timely motions to intervene after the denial of class certification. *See id.* at 554, 94 S.Ct. 756. Later, in *Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983), the Court held that the *American Pipe* tolling principle applied to all

members of the putative class, whether they subsequently chose to intervene or to bring a separate action. *Id.* at 353–54, 103 S.Ct. 2392.[1]

In both *American Pipe* and *Crown,* the Supreme Court was principally concerned with protecting the policies behind Rule 23 of the Federal Rules of Civil Procedure. *See American Pipe,* 414 U.S. at 550–54, 94 S.Ct. 756 ("A contrary rule allowing participation only by those potential members of the class who had earlier filed motions to intervene would deprive Rule 23 class actions of the efficiency and economy of litigation which is principle purpose of the procedure."); *Crown,* 462 U.S. at 349–50, 103 S.Ct. 2392 ("To protect the policies behind the class action procedure, the [*American Pipe*] Court held that 'the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action.'")(*quoting American Pipe,* 414 U.S. at 553–54, 94 S.Ct. 756). The *Crown* Court explained the rationale of the *American Pipe* rule:

> [U]nless the filing of a class action tolled the statute of limitations, potential class members would be induced to file motions to intervene or to join in order to protect themselves against the possibility that certification would be denied. The principal purposes of the class action procedure-promotion of efficiency and economy of litigation-would thereby be frustrated.

*Crown,* 462 U.S. at 349, 103 S.Ct. 2392 (internal citations omitted). In expanding the *American Pipe* rule to putative class members who later file their own individual actions, the *Crown* court explained:

> A putative class member who fears that class certification may be denied would

have every incentive to file a separate action prior to the expiration of his own period of limitations. The result would be a needless multiplicity of actions-precisely the situation that Federal Rule of Civil Procedure 23 and the tolling rule of *American Pipe* were designed to avoid. *Id.* at 350–51, 103 S.Ct. 2392. Thus, the predominant concern underlying the *American Pipe* and *Crown* holdings was to protect the judicial economy and efficiency of class actions by avoiding needless multiplicity of actions.

In both *American Pipe* and *Crown,* the Supreme Court was careful to emphasize the necessity of reconciling the tolling of limitations periods in class actions with the general policies underlying statutes of limitations. Specifically, the Court focused on the policy of guaranteeing essential fairness to a defendant by ensuring he has notice of possible claims against him, as well as the policy of barring claims by a plaintiff who " 'has slept on his rights.' " *American Pipe,* 414 U.S. at 554–55, 94 S.Ct. 756 (*quoting Burnett v. New York Central R. Co.,* 380 U.S. 424, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965)); *see also Crown,* 462 U.S. at 352–53, 103 S.Ct. 2392 ("Limitations periods are intended to put defendants on notice of adverse claims and to prevent plaintiffs from sleeping on their rights ...."). Accordingly, courts contemplating tolling limitations periods must balance two competing concerns: 1) maintaining efficiency and economy of in the litigation of class actions, and 2) sustaining the policies underlying statutes of limitations.

In light of *American Pipe* and *Crown,* other courts have tried to discern exactly when the tolling of limitations periods based on class actions should cease. Many Circuit Courts of Appeals have held that

---

**1.** The *Crown* Court also recognized that limitations periods under Title VII are not juris-

dictional, and thus can be tolled. *See Crown,* 462 U.S. at 350 n. 3, 103 S.Ct. 2392.

tolling ceases directly upon the denial of class certification, and does not extend through some later order in the action or throughout the appeals process. *See, e.g., Stone Container Corp. v. U.S.*, 229 F.3d 1345, 1356 (Fed.Cir.2000) ("[W]e hold that tolling ends when class certification is denied in the trial court."); *Armstrong v. Martin Marietta*, 138 F.3d 1374, 1380 (11th Cir.1998) (en banc) (holding that tolling ends upon district court's denial of class certification and does not extend until later order or throughout appeals process); *Calderon v. Presidio Valley Farmers Ass'n*, 863 F.2d 384, 390 (5th Cir.1989) (per curiam) (holding that statute of limitations begins to run again upon entry of the district court's order denying class certification, even if the district court later reconsiders the issue and certifies a class), *cert. denied*, 493 U.S. 821, 110 S.Ct. 79, 107 L.Ed.2d 45 (1989); *Andrews v. Orr*, 851 F.2d 146, 149–50 (6th Cir.1988) (holding that the instant suit "ceased to be a class action" and tolling ended, upon entry of order denying class certification); *Fernandez v. Chardon*, 681 F.2d 42, 48 (1st Cir. 1982) ("[T]olling would have ended ... when the district court declined to certify the class."), *aff'd, Chardon v. Soto*, 462 U.S. 650, 103 S.Ct. 2611, 77 L.Ed.2d 74 (1983). *But see Nat'l Asbestos Workers Medical Fund v. Philip Morris, Inc.*, No. 98–CV–1492, 2000 WL 1424931 at *2 (E.D.N.Y. Sept. 26, 2000) (holding that the recent adoption of Rule 23(f), which permits federal courts of appeals to hear an interlocutory appeal of denial of class certification at its discretion, allows the statute of limitations to be tolled through appeal). Additionally, most of the Circuit Courts of Appeal that have examined the issue have determined that if a class is certified, tolling ceases as to a particular class member when that class member opts out of the action. *See, e.g., Realmonte v. Reeves*, 169 F.3d 1280, 1283–84 (10th Cir.1999) (holding that statutes of limitation was tolled until

class member exercised right to opt out); *Tosti v. City of Los Angeles*, 754 F.2d 1485, 1488 (9th Cir.1985) ("[W]hen certification has been granted, the statute begins running anew from the date when the class member exercises the right to opt out ...."); *Appleton Elec. Co. v. Graves Truck Line, Inc.*, 635 F.2d 603, 607–08 (7th Cir.1980), *cert. denied*, 451 U.S. 976, 101 S.Ct. 2058, 68 L.Ed.2d 357 (1981) (holding that where a defendant class certified, the statute of limitations remains tolled until a defendant opts out). However, this court is not aware of a case that addresses the precise issue before this court: once a class is certified, does tolling of the limitations periods end when the district court enters summary judgment on all class claims, or does tolling continue until final judgment is entered?

### b. Tolling ends on Summary Judgment

As detailed above, the principal concern motivating the creation of the tolling doctrine was the preservation of the primary goals of Rule 23, maintaining efficiency and economy in class actions. That is, the Supreme Court wanted to prevent a "needless multiplicity of actions." *Crown*, 462 U.S. at 351, 103 S.Ct. 2392. This court cannot say that tolling the limitations periods until entry of final judgment, when an earlier order has effectively resolved the class claims, prevents a needless multiplicity of actions.

Although this court recognizes that the summary judgment order in the *Morgan* class action was interlocutory and incapable of being appealed until final judgment, it still effectively resolved all class claims upon which class members could have based a tolling argument. Thus, tolling the limitations period beyond the entry of summary judgment would prevent a "needless multiplicity of actions" only if an

individual plaintiff could reasonably rely on the possibility that the district court may vacate and reverse its summary judgment order. *See Armstrong*, 138 F.3d at 1380 (using a reasonableness standard to determine when the statute of limitations would start to run in a class action). Although the *Morgan* court *could* have reviewed and reversed its entry of summary judgment on all the class claims anytime prior to the entry of final judgment, a reasonable class member would not rely on that hope.[2] *Cf. id.* at 1381 (noting that no reasonable person would rely on the hope that the district court would reconsider its order denying class certification). The *Morgan* court found the class claims insufficient as a matter of law on June 26, 2000. For all intents and purposes, the class claims were "adjudicated" on June 26, 2000. As such, tolling should end on that date.[3]

### c. Prior Representations

Womack still argues that prior to the initiation of this action, UPS had represented a contrary position on the tolling of limitation periods. In support of that contention, Womack attaches various court documents and letters to his Response to the Motion to Dismiss. *See* Ex. 1, Pl.'s Brief (Excerpt of Brief filed with Eighth Circuit of Appeals); Ex. 2, Pl.'s Brief (Joint Motion to Stay Proceedings and Order, *Finley v. United Parcel Service, Inc.*, Civil Action No. 3:01–CV–46–J–25–TEM); Ex. 3, Pl.'s Brief (Joint Motion to Stay Proceedings and Consent Order, *Austin v. United Parcel Service of America, Inc., United Parcel Service, Inc.*, Civil Action No. 3:00–CV–1339–J–20–TJC); Ex. 4, Pl.'s Brief (Order in Civil Action No.

4:94CV1184CEJ); Ex. 5, Pl.'s Brief (Stipulation of Dismissal in Civil Action No. 4:94CV1184CEJ); Ex. 6, Pl.'s Brief (Letter from UPS addressed to EEOC). After reviewing the documents, however, the court cannot find that UPS has represented a contrary position or conceded Womack's argument.

First, the excerpt of the brief filed with the Eighth Circuit Court of Appeals does not contain a contrary position from UPS. In the brief, UPS states the following: "On June 26, 2000, the District Court granted UPS summary judgment on the class claims (and certain individual claims) and denied Plaintiffs summary judgment on pay. Judgment was entered on these (but not all) claims on May 10, 2002." Ex. 1, Pl's Brief. As the language quoted above shows, UPS was setting forth the procedural history of the *Morgan* litigation, not advocating a "position diametrically opposite" to its argument now. *See* Pl's Brief, p. 10. Nothing in the recitation of the procedural history indicates that UPS was suggesting that tolling of any limitations period ended on May 10, 2002, rather than on June 26, 2000.

Similarly, the court documents proffered by Womack from *Finley v. United Parcel Service*, Civil Action No. 3:01–CV–46–J–25–TEM, and *Austin v. United Parcel Service of America, Inc., et al*, Civil Action No. 3:00–CV–1339–J–20–TJC, do not indicate that UPS was advocating that the limitations period on individual claims remained tolled until entry of final judgment on class claims. Rather, the court documents suggest that the parties in those cases were acting in accordance with the

---

**2.** Indeed, the record indicates that on March 19, 2002, the *Morgan* court summarily denied the plaintiffs' Motion to Reconsider its June 26, 2000 order granting summary judgment against class claims.

**3.** The court notes that such a determination does not discourage a class member from relying on the class action as a mean of redressing his or her own individual claim. Rather, it encourages class members to rely on the class action until the district court enters an order resolving the class claim.

Eleventh Circuit's decision in *Armstrong*.[4] *See* Ex. 2 & 3, Pl.'s Brief; *Armstrong*, 138 F.3d at 1391. In *Armstrong*, the Eleventh Circuit counseled individual plaintiffs who wanted to preserve both their individual right to file a lawsuit, as well as their right to appeal a denial of class certification, to file their individual suits within the applicable statute of limitations, then immediately seek a stay of the proceedings. *See Armstrong*, 138 F.3d at 1391. Similarly, Finley and Austin, both members of the class in *Morgan*, filed their individual actions against UPS after the *Morgan* court entered summary judgment on the class claims and then filed joint motions to stay the proceedings. *See* Ex. 2, Pl.'s Brief; Ex. 3, Pl's Brief. By filing joint motions to stay the proceedings, the parties followed the guidance offered by the Eleventh Circuit in *Armstrong* which preserved the viability of the plaintiffs' individual claims.

The remaining documents proffered by Womack do not suggest that UPS has advocated inconsistent positions. The stipulations from the *Morgan* action, stating that the class claims would not be affected by the dismissals of the EEOC and an individual plaintiff, do not concede Womack's argument. *See* Ex. 4, Pl.'s Brief; Ex. 5, Pl.'s Brief. Rather, the language addressing the class claims represents the exercise of caution and effort by diligent counsel to preserve any rights, including the right to appeal, the class may have retained after the entry of summary judgment on the class claims. Finally, the court cannot conclude that a letter from UPS to the EEOC in November 1999, in which UPS states that an individual plaintiff's claims are tolled through the pendency of a class action, concedes Womack's position.

### 2. *Remaining Title VII Claims*

Womack contends that even if tolling ended on June 26, 2000, the Complaint still states Title VII claims of race discrimination and retaliation arising during the applicable limitations period. Upon review of the Complaint, the court concludes that Womack has asserted claims under Title VII arising during the applicable limitations period with regard to UPS's alleged discriminatory and/or retaliatory denial of equal compensation to Womack. *See Bazemore v. Friday*, 478 U.S. 385, 395, 106 S.Ct. 3000, 92 L.Ed.2d 315 (1986) (holding that each week's paycheck that delivers less to a black than to a similarly situated white is a wrong actionable under Title VII).

Womack, in alleging that UPS has failed to promote him within the year preceding the filing of the complaint, also may have stated a failure to promote claim under Title VII. However, the memoranda filed with the court indicate that the parties disagree as to whether Womack had 180 days or 300 days from the alleged act of discrimination to file a charge with the EEOC. Whether Womack had 180 or 300 days to file a charge with the EEOC directly affects the scope of triable issues, as well as the extent of possible damages. Accordingly, the parties are DIRECTED to brief whether Womack was entitled to 180 or 300 days to file his charge with the EEOC. The parties should submit their briefs to the court, on or before March 5, 2004.

### B. *Section 1981 Claims*

UPS also contends that the Womack's Section 1981 claims are barred as untimely. Although Section 1981 does not contain its own statute of limitations, the

---

4. Both *Finley* and *Austin* were filed in United States District Court for the Middle District of Florida, which is within the Eleventh Circuit.

Supreme Court has stated that courts interpreting and applying Section 1981 should borrow from the most analogous state statute of limitations, which typically is the limitations period applicable to personal injury casus of action. *See Goodman v. Lukens Steel Co.*, 482 U.S. 656, 661–62, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987). Accordingly, the Fourth Circuit has stated that North Carolina's three year statute of limitations for personal injury actions governs Section 1981 claims. *See Kornegay v. Burlington Indus., Inc.*, 803 F.2d 787, 788 (4th Cir. 1986); N.C. GEN. STAT. § 1–52. UPS asserts that all of the alleged acts of discrimination referenced in Womack's Complaint occurred prior to the end of 1999; thus, Womack's complaint filed more than three years later on July 17, 2003, is untimely. Again, Womack argues that the three year statute of limitations for his Section 1981 claims was tolled until the *Morgan* court entered final judgment on the class claims on May 20, 2002.

### 1. Tolling in Section 1981 Claims

The Supreme Court has stated that because Section 1981 actions require federal courts to "borrow" the applicable state statutes of limitations, federal courts must necessarily "borrow" state law on tolling as well. *See Chardon v. Soto*, 462 U.S. 650, 660–62, 103 S.Ct. 2611, 77 L.Ed.2d 74 (1983). Accordingly, this court looks to North Carolina law to determine if the statute of limitations for Womack's Section 1981 claims was tolled by the filing of the *Morgan* action, and if so, when the tolling ceased.

Neither the North Carolina General Statutes, nor cases from the North Carolina Supreme Court, provide an answer for the court. Thus, the court must predict how the North Carolina Supreme Court would rule if presented with this issue. *See Private Mortg. Inv. Services, Inc. v. Hotel and Club Associates, Inc.*, 296 F.3d 308, 312 (4th Cir.2002). In so predicting, the court may consult decisions from the North Carolina Court of Appeals, the state's intermediate appellate court, for guidance. *See id.* (noting that decisions of the state's intermediate appellate court "constitute next best indicia of what state law is").

In *Scarvey v. First Fed. Sav. & Loan Assoc. of Charlotte*, 146 N.C.App. 33, 552 S.E.2d 655 (2001), the North Carolina Court of Appeals held that the filing of a class action tolls the statute of limitations as to all putative class members until a trial court denies class certification. *See id.* at 43, 552 S.E.2d 655. The Court of Appeals clarified that if an interlocutory appeal is taken from the denial of certification, tolling continues during the pendency of the appeal. *See id.* However, if an interlocutory appeal is not taken, tolling ends on the trial court's denial of certification. *See id.* Thus, *Scarvey* indicates that the North Carolina Supreme Court would rule that the filing of a class action tolls the statute of limitations for putative class members at least until class certification is denied.

■ Notably, *Scarvey* does not address when tolling should end if a class is certified. However, the North Carolina Court of Appeals in *Scarvey* does state that the reasoning in federal class action cases is instructive and provides guidance for North Carolina courts. *See id.* at 660 (*citing Pitts v. American Sec. Ins. Co.*, 144 N.C.App. 1, 550 S.E.2d 179 (2001); *Hamilton v. Memorex Telex Corp.*, 118 N.C.App. 1, 454 S.E.2d 278, 286 (1995)). Thus, the court predicts that the North Carolina Supreme Court, after reviewing *American Pipe* and *Crown*, would determine that the tolling of statutes of limitations on individual claims ends when a trial court grants summary judgment against class claims. Accordingly, the court concludes that the

statute of limitations on Womack's Section 1981 claims was tolled until the *Morgan* court entered summary judgment on June 26, 2000.

### 2. Remaining Section 1981 Claims

Regardless, Womack contends that the Complaint does contain Section 1981 claims of race discrimination and/or retaliation arising after July 17, 2000, within the three year statute of limitations period. After reviewing the Complaint, the court concludes that Womack has asserted Section 1981 claims that arose during the three year statute of limitations period, including Womack's discriminatory compensation and failure to promote claims. Accordingly, the court will not dismiss the Complaint.

### IV. Conclusion

UPS's Motion to Dismiss Plaintiff's Complaint [DE–3] is DENIED. However, Womack's Section 1981 claims are limited to those that arose after July 17, 2000, in accordance with North Carolina General Statute Section 1–52.

Similarly, Womack's Title VII claims will be limited to those that arose during the applicable limitations period. Accordingly, the parties are DIRECTED to brief whether Womack was entitled to 180 or 300 days to file his charge with the EEOC. The parties should submit their briefs to the court, **on or before March 5, 2004.** The parties should include any additional documents or other materials that support their position.

SO ORDERED.