Rossabi Reardon Klein Spivey PLLC v. Greater Greensboro Entm't Grp., LLC, 2020 NCBC 37.

| STATE OF NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE |
| --- | --- |
| | SUPERIOR COURT DIVISION |
| GUILFORD COUNTY | 18 CVS 9568 |

ROSSABI REARDON KLEIN
SPIVEY PLLC,

        Plaintiff,

v.

GREATER GREENSBORO
ENTERTAINMENT GROUP, LLC
and N CLUB, LLC,

        Defendants,

and

GREATER GREENSBORO
ENTERTAINMENT GROUP, LLC,

        Third-Party Plaintiff,

v.

AMIEL ROSSABI,

        Third-Party Defendant.

**ORDER AND OPINION ON
DEFENDANTS' MOTION FOR
JUDGMENT UPON THE
PLEADINGS**

1. **THIS MATTER** is before the Court on Defendants' Motion for Judgment Upon the Pleadings (the "Motion"). (ECF No. 32.) The Motion seeks dismissal pursuant to Rule 12(c) of the North Carolina Rules of Civil Procedure (the "Rule(s)") of Plaintiff Rossabi Reardon Klein Spivey PLLC's ("Plaintiff") claim for breach of contract and alternative claim for *quantum meruit*.

2. For the reasons set forth herein, the Court **DENIES** the Motion.

*Rossabi Reardon Klein Spivey PLLC, by Gavin J. Reardon and Amiel J. Rossabi, for Plaintiff and Third-Party Defendant.*

*Boydoh & Hale, PLLC, by J. Scott Hale for Defendants and Third-Party Plaintiff.*

Robinson, Judge.

## I.    INTRODUCTION

3.    On March 8, 2019, before this case was designated as a mandatory complex business case and assigned to the undersigned, Defendants filed a Motion to Dismiss pursuant to Rule 12(b)(6) and Motion to Strike (the "Rule 12(b)(6) Motion"), (Defs.' Mot. Dismiss and Mot. Strike, ECF No. 6 ["Rule 12(b)(6) Mot."]), which was denied by the Honorable Superior Court Judge David L. Hall ("Judge Hall"), (*see* ECF Nos. 1–2, 7).  Defendants now move under Rule 12(c) to dismiss the same claims that Judge Hall declined to dismiss under Rule 12(b)(6).

## II.    FACTUAL BACKGROUND

4.    The Court does not make findings of fact on a motion for judgment on the pleadings pursuant to Rule 12(c), but only recites those factual allegations from the pleadings and matters of record that are properly considered, relevant, and necessary to the Court's determination of the Motion.

5.    Plaintiff is a law firm organized as a professional limited liability company under the laws of the State of North Carolina with its principal place of business in Guilford County, North Carolina.  (Compl. ¶¶ 4, 8, ECF No. 3.)  At all times relevant to this litigation, Amiel J. Rossabi ("Rossabi") acted as Plaintiff's managing partner. (Compl. ¶ 4.)

6.    Defendant Greater Greensboro Entertainment Group, LLC ("GGEG") is a limited liability company organized under the laws of the State of North Carolina with its principal place of business in Guilford County, North Carolina.  (Compl. ¶ 5.)

7. Defendant N Club, LLC ("N Club," collectively with GGEG "Defendants") is a limited liability company organized under the laws of the State of North Carolina with its principal place of business in Guilford County, North Carolina. (Compl. ¶ 6.)

8. Rocco Scarfone ("Scarfone") is a manager for GGEG and N Club. (Compl. ¶ 7.) Rossabi and Scarfone have a close friendship and own multiple businesses together, including GGEG. (Compl. ¶¶ 12, 15.) Plaintiff has represented Defendants and Scarfone, individually and on behalf of entities he owns (the "Scarfone Group"), on various legal matters since 2007. (Compl. ¶ 10.)

9. N Club owns property located at South Elm Street in Greensboro, North Carolina and leases it to GGEG. (Compl. ¶ 21.) GGEG does business at the leased property as the Cone Denim Entertainment Center. (Compl. ¶ 21.) In or around July 2017, an employee of the City of Greensboro (the "City") contacted Scarfone and communicated the City's plan to condemn N Club's access easement and terminate GGEG's shared parking agreement for the leased property. (Compl. ¶¶ 1, 20.) Plaintiff represented Defendants in an attempt to prevent the City from successfully condemning the access easement and terminating the parking agreement. (*See* Compl. ¶¶ 23, 25, 27, 34, 43, 54.)

10. In or about late October 2017, Rossabi negotiated a Professional Services Agreement ("PSA") with the City, which provided that the City would reimburse Defendants up to $45,000 for professional fees incurred in connection with the preliminary inspections and review of the City's proposed condemnation plan.

(Compl. ¶¶ 30–31.) Pursuant to the PSA, the City paid, among other expenses, $33,655 in legal fees incurred by Defendants. (Compl. ¶ 33.)

11. Notwithstanding Rossabi and Plaintiff's attempts to prevent the City from proceeding with its plan, on or about December 19, 2017, the Greensboro City Council approved the condemnation of the easement and the termination of the shared parking agreement. (Compl. ¶¶ 34–35.) Approval of the condemnation meant that Defendants would need to file a lawsuit against the City to seek protection against the loss of the easement and the shared parking agreement (the "Cone Denim Case"). (Compl. ¶ 36.)

12. Scarfone advised Plaintiff that he would be "ruined financially" if he did not obtain a favorable outcome from the Cone Denim Case; however, neither he nor Defendants could pay an hourly rate for Plaintiff's legal services. (Compl. ¶ 38.)

13. During Plaintiff and the Scarfone Group's attorney-client relationship, they used various billing arrangements for Plaintiff's work, including payment on an hourly rate and a contingency fee basis. (Compl. ¶ 11.) Occasionally, Plaintiff provided Scarfone with free legal services. (Compl. ¶ 11.) In 2017, Scarfone "was perpetually late or slow" in making payments to Plaintiff for the legal services provided. (Compl. ¶ 24.) Nevertheless, Plaintiff continued to represent Defendants in the Cone Denim Case. (Compl. ¶¶ 25, 27.)

14. Scarfone represented to Plaintiff that Plaintiff would share in the recovery if Rossabi was able to negotiate a deal with the City. (Compl. ¶ 28.) Ultimately, Scarfone requested and Plaintiff agreed, that beginning on or about December 20,

2017, Plaintiff would represent Defendants on a one-third (1/3) contingency fee basis. (Compl. ¶¶ 40, 42.)

15. On January 25, 2018, Plaintiff drafted a written contingency fee agreement (the "Contingency Agreement") to memorialize the oral agreement between the parties. (Compl. ¶ 48.) The Contingency Agreement provides in part that:

> "[Plaintiff] will represent [Defendants] with respect to the [Cone Denim Case], with the understanding that [Plaintiff] will receive a contingent fee equal to $33^1/_3\%$ of the amount of recovery. The recovery shall mean any compensation GGEG and/or N Club receive, whether through settlement or otherwise related to the [Cone Denim Case]."

(Compl. Ex. 3, ECF No. 4.)

16. On or about January 26, 2018, Scarfone received the Contingency Agreement. (Compl. ¶ 51.) Although Plaintiff attaches an unsigned version of the Contingency Agreement to its Complaint, Plaintiff alleges that Scarfone informed Rossabi that he signed the agreement on behalf of Defendants. (Compl. ¶ 55.)

17. Defendants ultimately settled the Cone Denim Case for approximately $1 million. (Compl. ¶ 62.) Plaintiff alleges that under the Contingency Agreement, Plaintiff earned and was entitled to recover approximately $333,000 resulting from its representation of Defendants in obtaining the settlement. (Compl. ¶ 62.) Plaintiff alleges that, notwithstanding the Contingency Agreement, Defendants have only paid Plaintiff $85,000 for the services rendered by Plaintiff to Defendants in the Cone Denim Case. (Compl. ¶ 63).

18. Plaintiff has made repeated demands to Defendants to obtain the amount still owed pursuant to the Contingency Agreement; however, Defendants refuse to pay Plaintiff the total amount due and owing. (Compl. ¶ 66.)

## III. PROCEDURAL BACKGROUND

19. The Court sets forth here only those portions of the procedural history relevant to its determination of the Motion.

20. Plaintiff filed the Complaint initiating this action on December 5, 2018. (*See* ECF No. 3.)

21. On July 29, 2019, Defendants filed their Answer to Complaint and Greater Greensboro Entertainment Group, LLC's Third-Party Complaint asserting claims against Rossabi (the "Answer"). (ECF No. 4.)

22. This case was designated as a mandatory complex business case and assigned to the undersigned on July 30, 2019. (ECF Nos. 1–2.)

23. Plaintiff filed the Answer to Third-Party Complaint on September 19, 2019. (ECF No. 25.)

24. Defendants filed the Motion and brief in support thereof on November 21, 2019. (Br. Supp. Defs.' Mot. J. Upon Pleadings, ECF No. 33 ["Br. Supp."]; *see also* ECF No. 32.)

25. The Motion is ripe for resolution. As permitted by Business Court Rule 7.4, the Court decides this Motion on the papers submitted by the parties without a hearing.

## IV.    LEGAL STANDARD

26.    "A motion for judgment on the pleadings should not be granted unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Carpenter v. Carpenter*, 189 N.C. App. 755, 761, 659 S.E.2d 762, 767 (2008).  "When ruling on a motion for judgment on the pleadings, the trial court 'is to consider only the pleadings and any attached exhibits, which become part of the pleadings.'"[1]  *Cash v. State Farm Mut. Auto. Ins. Co.*, 137 N.C. App. 192, 202, 528 S.E.2d 372, 378 (2000) (quoting *Minor v. Minor*, 70 N.C. App. 76, 78, 318 S.E.2d 865, 867 (1984)).

27.    On a Rule 12(c) motion, "[t]he movant is held to a strict standard and must show that no material issue of facts exists and that he is clearly entitled to judgment." *Ragsdale v. Kennedy*, 286 N.C. 130, 137, 209 S.E.2d 494, 499 (1974).  "[T]he court cannot select some of the alleged facts as a basis for granting the motion on the pleadings if other allegations, together with the selected facts, establish material issues of fact." *J. F. Wilkerson Contracting Co. v. Rowland*, 29 N.C. App. 722, 725, 225 S.E.2d 840, 842 (1976).  The Court must read the pleadings in the light most favorable to the nonmoving party, and

> [a]ll well pleaded factual allegations in the nonmoving party's pleadings are taken as true and all contravening assertions in the movant's pleadings are taken as false.  All allegations in the nonmovant's

---

[1] Materials that are not appropriate for the Court's review on a Rule 12(c) motion have been attached to the briefing of this Motion.  However, when it is clear from the record and the order itself that the Court has not considered additional materials, a Rule 12(c) motion is not converted to a Rule 56 motion. *Estate of Belk v. Boise Cascade Wood Prods., L.L.C.*, 824 S.E.2d 180, 183 (N.C. Ct. App. Feb. 5, 2019).  For the purposes of ruling on the Motion, the Court only considers the pertinent pleadings and attachments thereto which are properly considered on the Motion.

pleadings, except conclusions of law, legally impossible facts, and matters not admissible in evidence at the trial, are deemed admitted by the movant for purposes of the motion.

*Ragsdale*, 286 N.C. at 137, 209 S.E.2d at 499 (citations omitted).

28. "Judgment on the pleadings is not favored by the law . . . ." *Huss v. Huss*, 31 N.C. App. 463, 466, 230 S.E.2d 159, 162 (1976). The function of Rule 12(c) "is to dispose of baseless claims . . . when the formal pleadings reveal their lack of merit." *Ragsdale*, 286 N.C. at 137, 209 S.E.2d at 499. "[J]udgment on the pleadings is not appropriate merely because the claimant's case is weak and he is unlikely to prevail on the merits." *Huss*, 31 N.C. App. at 469, 230 S.E.2d at 163. "A motion for judgment on the pleadings is allowable only where the pleading of the opposite party is so fatally deficient in substance as to present no material issue of fact . . . ." *George Shinn Sports, Inc. v. Bahakel Sports, Inc.*, 99 N.C. App. 481, 486, 393 S.E.2d 580, 583 (1990).

## V.    ANALYSIS

29. Defendants contend that the pleadings reveal that Plaintiff's breach of contract and *quantum meruit* claims are barred as a matter of law; therefore, Plaintiff's claims should be dismissed pursuant to Rule 12(c). (Br. Supp. 6, 7.) However, as a preliminary matter, the Court must address Plaintiff's argument that as a result of the filing by Defendants of their Rule 12(b)(6) Motion, "Judge Hall already considered –and rejected– Defendants' Motions to Dismiss and Strike[,]" therefore, this Court cannot consider this Motion based "entirely on the same legal

theories that were already rejected by Judge Hall." (Pl.'s Br. Opp. Mot. J. Pleadings 2, ECF No. 43.)

### A.    The Relation of the Rule 12(b)(6) and 12(c) Orders

30.    "It is well established that, ordinarily, 'no appeal lies from one Superior Court judge to another; that one Superior Court judge may not correct another's errors of law; and that ordinarily one judge may not modify, overrule, or change the judgment of another Superior Court judge previously made in the same action.'" *Fox v. Johnson*, 243 N.C. App. 274, 282, 777 S.E.2d 314, 322 (2015) (quoting *Calloway v. Ford Motor Co.*, 281 N.C. 496, 501, 592 S.E.2d 484, 488 (1972)). "The only exception occurs when three conditions are met: (1) the subsequent order 'was rendered at a different stage of the proceeding, (2) the materials considered by the second judge were not the same, and (3) the first motion did not present the same question as that raised by the later motion[.]'" *Fox*, 243 N.C. App. at 282, 777 S.E.2d at 322 (quoting *Smithwick v. Crutchfield*, 87 N.C. App. 374, 376, 361 S.E.2d 111, 113 (1987)) (brackets omitted).

31.    The North Carolina Court of Appeals has recognized that under certain factual circumstances a party can move to dismiss the claims brought against it pursuant to Rule 12(b)(6) and subsequently move pursuant Rule 12(c). *Fox*, 243 N.C. App. at 282–83, 777 S.E.2d at 322. Under such circumstances:

> a complaint is subject to dismissal under Rule 12(b)(6) if no law exists to support the claim made, if sufficient facts to make out a good claim are absent, or if facts are disclosed which will necessarily defeat the claim. On the other hand, a motion for judgment on the pleadings pursuant to Rule 12(c) should only be granted when the movant clearly establishes that no material issue of fact remains to be resolved and that

the movant is entitled to judgment as a matter of law. Neither rule employs the same standard. It is plainly evident under our Rules of Civil Procedure that because a plaintiff has survived a 12(b)(6) motion, and thus has alleged that a claim for which relief may be granted, his survival in the action is not equivalent of the court determining that conflicting issues of fact exist and no party is entitled to judgment as a matter of law under Rule 12(c).

*Id.* (quoting *Cash*, 137 N.C. App. at 201–02, 528 S.E.2d at 378).

32. However, "one judge may not reconsider the legal conclusions of another judge." *Adkins v. Stanly Cty. Bd. of Educ.*, 203 N.C. App. 642, 646, 692 S.E.2d 470, 473 (2010) (citing *State v. Woolridge*, 357 N.C. 544, 549–50, 592 S.E.2d 191, 194 (2003)). Notwithstanding the differing legal standards applicable to a Rule 12(b)(6) and a Rule 12(c) motion, one trial court judge may not "make a contrary ruling on an issue of law already resolved by a prior trial court judge's ruling despite the [motion's] denomination[.]" *Robinson v. Duke Univ. Health Sys.*, 229 N.C. App. 215, 222–23, 747 S.E.2d 321, 327–28 (2013) (holding that the trial court's grant of summary judgment was improper after another judge previously denied a Rule 12(b)(6) motion on the same legal issue); *Adkins*, 203 N.C. App. at 651–53, 692 S.E.2d at 476 (holding the same).

33. The Rule 12(b)(6) Motion asserted that Plaintiff's breach of contract claim fails as a matter of law, specifically arguing:

The first cause of action (for breach of contract) should be dismissed because it seeks recovery of a contingency fee on the basis of an alleged contingency fee agreement that was not formed in the first place and would not be enforceable as alleged anyway. There was no such contingency fee agreement as a matter of law, because neither client signed and executed a written agreement to that effect, much less Plaintiff's proffered draft contingency fee agreement, which remains unsigned as attached to the Complaint.

> Plaintiff's second cause of action (quantum meruit) . . . fails in at least two respects. First, it attempts to tie its recovery under quantum meruit to its alleged contingency fee, which legally was never formed and is unenforceable in any event for the foregoing reasons. Second, the Complaint itself fails to allege any reasonable value of its services at all, much less beyond the substantial amount already paid as agreed.

(Rule 12(b)(6) Mot. ¶ 3.)

34. Now on the current Motion, brought pursuant to Rule 12(c), Defendants again request that the Court dismiss Plaintiff's claims on the same grounds: (1) that Plaintiff's breach of contract claim fails because it is based on an unenforceable oral contingency fee agreement pursuant to North Carolina Rule of Professional Conduct ("N.C.R.P.C.") 1.5(c); and (2) that Plaintiff's *quantum meruit* claim must fail, primarily because it is not based on the value of services provided by Plaintiff but instead on the unenforceable contingency agreement. (Br. Supp. 5–13; Reply Br. Supp. Defs.' Mot. J. Upon Pleadings 5–8, ECF No. 46 ["Reply Br."].) Defendants contend in both Motions that Plaintiff's claims necessarily fail because Plaintiff admits they are based on an alleged oral contingency fee agreement that is unenforceable as a matter of law. (Br. Supp. 5–6, Reply Br. 5–6.)

35. Defendants contend that *Adkins* does not control the outcome of the Motion or "support Plaintiff's conclusion that this Court lacks authority to rule upon Defendants' Rule 12(c) [M]otion." (Reply Br. 2–3.) However, *Adkins* "applies where the legal issue to dismiss in both rulings is the same." *Gasper v. Bd. of Trs.*, 2012 N.C. App. LEXIS 168, at *10 (N.C. Ct. App. 2012). While Defendants seek dismissal pursuant to Rule 12(c) rather than Rule 12(b)(6) – thereby invoking a different legal

standard of analysis - and attempt to rely in part on a document attached to the Answer[2], they fail to present a different legal issue than those they raised in their Rule 12(b)(6) Motion. Judge Hall denied the Rule 12(b)(6) Motion on the same legal issues, and substantially the same materials and arguments, that are now raised by the Rule 12(c) Motion. Therefore, this Court may not reconsider the legal conclusions of Judge Hall. *See Adkins*, 203 N.C. App. at 646, 692 S.E.2d at 473.

36.     Even if the Court ultimately concluded that it could consider the legal questions raised by the Rule 12(c) Motion, it would nonetheless deny the Motion. Plaintiff has sufficiently pled its claims for breach of contract and *quantum meruit* and those claims do not fail as a matter of law under Rule 12(c).

**B.     Breach of Contract**

37.     "An essential element of claim for breach of contract is the existence of a valid contract between two or more parties." *Kerry Bodenhamer Farms, LLC v. Nature's Pearl Corp.*, 2017 NCBC LEXIS 27, at *10 (N.C. Super. Ct. Mar. 27, 2017) (internal quotation marks and citation omitted); *see also NFH, Inc. v. Troutman*, 2019 NCBC LEXIS 66, at *24 (N.C. Super. Ct. Oct. 29, 2019) (quoting *Poor v. Hill*, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000) ("To properly plead a breach of contract claim,

---

[2] Defendants contend that the consideration of the e-mail from Rossabi to Scarfone attached as Exhibit A to the Answer (the "E-mail") weighs in favor of giving this Court the authority to decide the Rule 12(c) Motion and establishes that the pleadings reveal that there was no signed contingency fee agreement. (Reply Br. 4–5; *see also* Compl. Ex. A, ECF No. 3.) However, viewing the E-mail with all the other pleadings, the Court concludes "that the materials and arguments considered by Judge [Hall] were substantially the same" as the materials and arguments before this Court. *See Smithwick*, 87 N.C. App. at 377, 361 S.E.2d at 113.

a plaintiff need only allege '(1) [the] existence of valid contract and (2) [a] breach of the terms of that contract.'")).

38. Defendants contend that, because the Complaint admits the Contingent Agreement is unsigned in violation of N.C.R.P.C. 1.5(c), there is no enforceable contract and the breach of contract claim fails as a matter of law. (Br. Supp. 5–6; Reply Br. 5–6.) Defendants' assertion as to the Complaint in this regard is incorrect.

39. N.C.R.P.C. Rule 1.5(c) states that "[a] contingent fee agreement shall be in writing signed by the client[.]" N.C.R. PROF'L CONDUCT r. 1.5(c). Defendants' contention, if true, could render the contingent fee agreement unenforceable. *Dunn v. Dart*, 2011 NCBC LEXIS 24, at *26 (N.C. Super. Ct. July 14, 2011) (concluding that any agreement between the parties was not enforceable absent compliance with N.C.R.P.C. Rule 1.5(e)); *see also Law Office of Juliano, P.C. v. Jensen*, 2015 U.S. Dist. LEXIS 190905, at *2–3 (M.D.N.C. 2015) (providing that "it would be highly unlikely for the North Carolina courts to enforce" a contingent fee agreement unrelated to the actual work performed and not in compliance with the N.C.R.P.C.).

40. But importantly, the Complaint does not admit that the Contingent Agreement was unsigned by Scarfone on behalf of Defendants. Rather, the execution of the document remains a disputed issue of material fact, precluding dismissal at this stage of the proceeding. *Groves v. Cmty. Hous. Corp.*, 144 N.C. App. 79, 87, 548 S.E.2d 535, 540 (2001) ("Judgment on the pleadings, pursuant to Rule 12(c), is appropriate when all the material allegations of fact are admitted in the pleadings and only questions of law remain.") (internal quotation marks and citation omitted).

41. Plaintiff alleges that Scarfone, on behalf of Defendants, requested that Plaintiff represent Defendants on a contingency fee basis, that Plaintiff agreed and drafted the written Contingency Agreement to memorialize the oral agreement between the parties, and that Defendants received and signed the Contingency Agreement but failed to comply with its terms. (Compl. ¶¶ 40–42, 48, 51, 55, 73–75.)

42. Defendants' denials in their Answer that the Contingency Agreement was never agreed to by Scarfone, provided to Scarfone, or signed by him, cannot nullify, on a Rule 12(c) motion, Plaintiff's allegations to the contrary. *See Ragsdale*, 286 N.C. at 137, 209 S.E.2d at 499 ("All well pleaded factual allegations in the nonmoving party's pleadings are taken as true and all contravening assertions in the movant's pleadings are taken as false."). The allegations in the Complaint are sufficient at this stage of the proceeding to state a claim for breach of contract. *See Priest v. Coch*, 2013 NCBC LEXIS 6, at *16–18 (N.C. Super. Ct. Jan. 25, 2013) (declining to dismiss a breach of contract claim on a Rule 12(b)(6) motion where the plaintiff alleged that there was a writing made in compliance with N.C.R.P.C. Rule 1.5(c)). Based on the pleadings, the Court cannot conclude as a matter of law that there is not an enforceable contingency fee agreement. Therefore, Defendants' Motion to dismiss Plaintiff's breach of contract claim should be DENIED.

C. **Quantum Meruit**

43. Plaintiff asserts an alternative claim for recovery based on *quantum meruit*. (Compl. 11.) "*Quantum meruit* is a measure of recovery for the reasonable value of services rendered in order to prevent unjust enrichment." *Paul L. Whitfield, P.A., v.*

*Gilchrist*, 348 N.C. 39, 42, 497 S.E.2d 412, 414 (1998). "To recover in *quantum meruit*, plaintiff must show: (1) services were rendered to defendants; (2) the services were knowingly and voluntarily accepted; and (3) the services were not given gratuitously." *Envtl. Landscape Design Specialist v. Shields*, 75 N.C. App. 304, 306, 330 S.E.2d 627, 628 (1985).

44. Defendants make a three-part argument for dismissal of Plaintiff's *quantum meruit* claim: (1) an implied-in-fact contract between the parties arising from the payments already received by Plaintiff bars Plaintiff's *quantum meruit* claim; (2) the failed Contingency Agreement cannot serve as the basis for a *quantum meruit* claim; and (3) Plaintiff's *quantum meruit* claim is not based upon the reasonable value of services provided by Plaintiff. (Br. Supp. 6–12; Reply Br. 6–8.) For the foregoing reasons, the Court finds Defendants' argument unpersuasive.

45. Defendants' first and third arguments are in large part based on Defendants' contention that Plaintiff received payments in the amounts of $33,655 and $85,000 for services provided by Plaintiff pursuant to an implied contract governing the parties' relationship pertaining to the resolution of the Cone Denim Case and that the total of those two payments ($118,655) is the reasonable value of the legal services rendered to Defendants. (Br. Supp. 8–13; Reply Br. 6–8; *see also* Compl. ¶¶ 62–63.)

46. Based on the pleadings, the Court cannot determine whether the Contingency Agreement as alleged by Plaintiff or some other implied contract as contended by Defendants governs this dispute between the parties or determine the

reasonable value of the services provided by Plaintiff to Defendants. These are issues to be determined on a more fully developed record. *See Guess v. Parrott*, 160 N.C. App. 325, 335, 585 S.E.2d 464, 470–71 (2003) (providing that various factors should be considered when determining the reasonable value of services rendered by an attorney for a *quantum meruit* claim, including "the terms of the percentage agreement, the nature of the litigation, difficulty of the case, time spent, the amount of money involved, results achieved[,] and amounts customarily charged for similar services in the same locality.").

47. Defendants' final contention that Plaintiff cannot sustain a *quantum meruit* claim based upon an unenforceable contingency fee agreement is similarly unavailing.

48. "Notwithstanding that an express contract precludes an implied contract concerning the same matter, it is also well established under North Carolina law that a party may plead claims in the alternative." *Zagaroli v. Neill*, 2017 NCBC LEXIS 103, at *14 (N.C. Super. Ct. Nov. 7, 2017) (citing *James River Equip., Inc. v. Mecklenburg Utils., Inc.*, 179 N.C. App. 414, 419, 634 S.E.2d 557, 560 (2006)). Plaintiff's claim for *quantum meruit* is properly made in the alternative to its breach of contract claim. *See Clark v. Burnette*, 2020 NCBC LEXIS 10, at *15 (N.C. Super. Ct. Jan. 28, 2020) (providing that a *quantum meruit* claim is an alternative to a breach of contract claim); *see also Law Offices of Peter H. Priest, PLLC v. Coch*, 244 N.C. App. 53, 70, 780 S.E.2d 163, 173 (2015) ("[A] party who seeks recovery in

*quantum meruit* while also seeking to recover on an express contract should ideally plead these claims in the alternative in [the] complaint[.]").

49. It cannot be determined at this stage of the proceeding whether or not the Contingency Agreement is an enforceable contract between the parties; however, this inquiry is not determinative as to whether Plaintiff may bring an alternative claim based on a *quantum meruit* theory of recovery. North Carolina courts have held that while a contingency fee agreement may ultimately be unenforceable, this fact alone does not bar a *quantum meruit* claim. *Robertson v. Steris Corp.*, 234 N.C. App. 525, 537, 760 S.E.2d 313, 321 (2014) ("[T]he fact that an agreement for legal representation was determined to be in violation of the Rules of Professional Conduct and unenforceable is of no consequence where an attorney's right of recovery arises in *quantum meruit*, because the trial court's award of fees is based upon the reasonable value of the attorney's services and not upon the failed agreement.") (quotation marks, brackets, and citation omitted); *In re Krispy Kreme Doughnuts, Inc.*, 2018 NCBC LEXIS 61, at *23–24 (N.C. Super Ct. June 20, 2018) ("North Carolina appellate courts have held that an underlying [N.C.R.P.C.] 1.5(c) violation does not necessarily bar any and all recovery of attorneys' fees and expenses if there

is a valid basis for recovery beyond the contract between the attorney and client, such as *quantum meruit*.").

50.    Accordingly, at this stage in the proceeding, the Court cannot conclude as a matter of law that Plaintiff's *quantum meruit* claim fails and Defendants' Motion to dismiss Plaintiff's *quantum meruit* claim should be DENIED.

## VI.    CONCLUSION

51.    For the foregoing reasons, the Court hereby **DENIES** the Motion.

**SO ORDERED**, this the 8th day of May, 2020.

/s/ Michael L. Robinson

Michael L. Robinson
Special Superior Court Judge
  for Complex Business Cases